UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CARL GOOSSENS,

|  |  |  |
|---|---|---|
|  | Plaintiff, | **DECISION** |
|  |  | **and** |
| v. |  | **ORDER** |

DEPT.  OF ENVIRONMENTAL CONSERVATION,          **08-CV-00446F**
D.E.C. OFFICER WADE, and                                          **(consent)**
D.E.C. OFFICER WARD,

                                                Defendants.

_____

APPEARANCES:          CARL GOOSSENS, *Pro Se*
                                  07-B-3412
                                  Collins Correctional Facility
                                  Box 340
                                  Collins, New York 14034-0340

                                  ERIC T. SCHNEIDERMAN
                                  Attorney General, State of New York
                                  Attorney for Defendants
                                  GEORGE MICHAEL ZIMMERMANN
                                  Assistant New York Attorney General, of Counsel
                                  Main Place Tower
                                  Suite 300A
                                  350 Main Street
                                  Buffalo, NY 14202

## JURISDICTION

On July 13, 2010, the parties to this action consented pursuant to 28 U.S.C. §

636(c)(1), to proceed before the undersigned.  The matter is presently before the court

on motions for summary judgment filed by Plaintiff on April 30, 2010 (Doc. No. 21), and

by Defendants on June 7, 2010 (Doc. No. 26).

## BACKGROUND

Plaintiff Carl Goossens ("Plaintiff" or "Goossens"), proceeding *pro se*, commenced this action on June 17, 2008, alleging that on November 27, 2005, Defendants New York Department of Environmental Conservation ("DEC") Officers Wade ("Wade"), and Ward ("Ward") (together, "Defendants"), unlawfully arrested Plaintiff in violation of the Fourth Amendment.  Plaintiff asserts two claims for relief, both seeking monetary damages for the alleged unlawful arrest and harassment.  By order filed October 29, 2008 (Doc. No. 3) ("Oct. 29, 2008 Order"), the action was terminated as against the DEC, which was also named as a defendant.  Plaintiff was also ordered to show cause why the action should not be dismissed as barred by *Heck v. Humphrey*, 512 U.S. 447 (1994), *i.e.*, that successful litigation of the instant claims would imply the invalidity of a criminal conviction.  On December 31, 2008, Plaintiff filed an amended complaint (Doc. No. 6) ("Amended Complaint"), asserting the same claims for relief, and explaining that Plaintiff's claims are not barred by *Heck*, given that on May 5, 2006, Acting Livingston County Court Judge Joan S. Kohout ("Judge Kohout"), following a suppression hearing held in Livingston County Court in connection with the criminal action, charging Plaintiff with Rape in the Third Degree in violation of New York Penal Law § 130.15, then pending against Plaintiff, entered an order finding Plaintiff's November 27, 2005 arrest by Defendants was without probable cause, and suppressing statements made by Plaintiff in connection with the arrest as obtained in violation of Plaintiff's Fifth Amendment right against self-incrimination.

On April 30, 2010, Plaintiff filed a motion for summary judgment (Doc. No. 21) ("Plaintiff's motion").  Plaintiff's motion is supported by the attached Statement of

2

Material Facts Per Local Rule 56.1(a) ("Plaintiff's Statement of Facts"), Plaintiff's

Declaration in Support of Motion for Summary Judgment ("Plaintiff's Declaration"), a

copy of Judge Kohout's May 5, 2006 Decision and Order ("Suppression Hearing D&O"),

and Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment

("Plaintiff's Memorandum").

On June 7, 2010, Defendants filed a countermotion for summary judgment (Doc.

No. 26) ("Defendants' motion"), along with supporting papers including Defendants'

Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in

Support of Defendants' Motion for Summary Judgment (Doc. No. 27) ("Defendants'

Memorandum"), the Declaration of DEC Officer Brian Wade (Doc. No. 28) ("Wade

Declaration"), with attached exhibit A ("Wade Declaration Exh. A"), the Declaration of

DEC Officer Chris Ward (Doc. No. 29) ("Ward Declaration"), the Declaration of

Assistant New York Attorney General George Michael Zimmermann in Opposition to

Plaintiff's Motion for Summary Judgment and in Support of the Defendants [*sic*] Motion

for Summary Judgment (Doc. No. 30) ("Zimmmermann Declaration"), with attached

exhibits A and B ("Defendants' Exh(s). __"), and Defendants' Local Rule 56(1)

Statement and Response to Plaintiff's Local Rule 56(1) Statement (Doc. No. 31)

("Defendants' Statement of Facts").  In opposition to Defendants' motion, Plaintiff filed

on July 27, 2010, Plaintiff's Response to Defendant's [*sic*] Counterstatement of

Undisputed Facts (Doc. No. 39) ("Plaintiff's Response").  Oral argument was deemed

unnecessary.

Based on the following, Plaintiff's motion is DENIED; Defendants' motion is

GRANTED.

**FACTS**[1]

On November 27, 2005, at 4:20 P.M., Defendants DEC Officers Brian Wade

("Wade") and Chris Ward ("Ward") (together, "Defendants"), were driving a marked

DEC police vehicle while on routine patrol in the Town of Avon ("Avon"), located in

Livingston County, New York, when Defendants observed a van parked in a private

driveway leading to a cornfield on Nations Road in Avon.  It was deer hunting season

and Defendants had a duty as DEC police officers to enforce New York laws regarding,

*inter alia*, wildlife, hunting and hunting licenses.  Because cornfields in late autumn

often attract deer and deer hunters, upon observing the van parked in the cornfield at

dusk and thinking the van may belong to a hunter, Defendants decided to approach the

van to check for hunting and license law compliance.

As Defendants pulled their patrol vehicle behind the van, Defendants noticed two

people were in the back of the van, one of whom climbed from the back to the front of

the van, while the other person peered out the window before lying down in the back of

the van as if to hide from Defendants' view.   Defendants exited the patrol vehicle, their

guns holstered, and approached the van.  Upon arriving at the van's driver's side door,

Ward observed a male sitting in the driver's seat, later identified as Plaintiff, and

another person lying on her side in the back of the van.  Wade approached the

passenger-side of the van where Wade saw Plaintiff sitting in the driver's seat pulling

on his pants which had been lowered to his knees, and the other occupant, later

identified as Mary Beth Atkins ("Atkins"), Plaintiff's girlfriend, lying on her back hiding

---

[1] Taken from the pleadings and motion papers filed in this action.

from view.  Wade opened the passenger side door to speak with the occupant in the rear of the vehicle, whom Wade observed to be a female in her early teens, and who was rearranging her clothing, pulling her shirt down and straightening her pants.  Wade asked the female occupant her name and age, and she identified herself as Mary Beth (Atkins), age 18.  In response to Wade's questioning, Atkins denied having sex with Plaintiff and refused to speak any further with Wade or Ward.

While Wade was addressing Atkins, Ward, at Wade's direction, opened the van's driver's side door and asked Plaintiff to exit the van and step in front of the patrol vehicle a short distance behind the van.  Plaintiff complied and, in response to Ward's request for identification, produced his New York State driver's license, showing Plaintiff's birthday as March 5, 1984, establishing Plaintiff was then 21 years old.  After conversing with Atkins, Wade walked to the front of the patrol vehicle where Plaintiff was being detained by Ward and asked Plaintiff his age and Plaintiff responded he was 20.  Wade than asked Plaintiff the name and age of the vehicle's female occupant, whom Plaintiff identified as Atkins, age 16.  In response to Wade's further questioning, Plaintiff admitted he had been having sex with Atkins in the van.  Wade then inquired whether Plaintiff thought it was wrong for a 20-year old to have sex with a 16-year old, and Plaintiff nodded that he did.  At this point, Plaintiff was not free to leave because Defendants were concerned that Plaintiff was having illegal sexual contact with Atkins who was younger than 17, the age of consent in New York.  Wade Declaration ¶ 19; Ward Declaration ¶ 18.

Wade then contacted the Livingston County Sheriff's Department by the patrol vehicle's radio, requesting assistance because the Sheriff would necessarily have more

experience with enforcing New York penal laws.  Soon thereafter, Livingston County

Sheriff's Deputies Mann and Rittenhouse arrived.  Deputy Mann was able to establish

that Plaintiff had been convicted of statutory rape of Atkins when she was 13 years old,

but was unable to determine whether Plaintiff's sex offender status resulted in any

restrictions on Plaintiff's contact with Atkins or others.

When Defendants asked Plaintiff about his sex offender status, Plaintiff

responded he did not wish to discuss the matter.  Instead, Plaintiff became angry and

denied having just admitted he was having sex with Atkins, stating that his pants were

pulled down because he was planning to urinate.

Meanwhile, Atkins telephoned her father who arrived to take Atkins home.

Atkins's father informed Wade that his daughter was only 15 years old, that he was

aware Atkins was with Plaintiff, that neither he, nor Atkins at that time wished to make

any complaint against Plaintiff, and that Plaintiff had not forced Atkins into sex.  Plaintiff

then requested permission to telephone his mother, who eventually arrived at the

scene.  Plaintiff drove from the scene in his own vehicle.

In connection with the stop, Officer Wade completed a New York State DEC

Office of Public Protection Complaint Form ("DEC Complaint Form"),[2] on which Wade

indicated the complaint pertained to an incident that occurred on November 27, 2005,

on Nations Road in Avon.  DEC Complaint Form at 1.  The nature of the complaint is

reported as "Penal Law." *Id*.  In describing the incident, Wade reported that while

conducting routine patrol for deer hunting activity along Nations Road, Wade checked

---

[2] Wade Declaration Exh. A.

the occupants of a vehicle parked in a cornfield off Nations Road.  *Id*.  The occupants of

the vehicle were determined to be Plaintiff and Atkins.  *Id*.  Wade concluded that "[t]he

case possibly involves a statutory rape of a 15 year old female."  *Id*.

An investigation of the incident was opened by Livingston County Sheriff

Investigator Kimberly Moran ("Moran"), who was familiar with Plaintiff as a registered

sex offender.  Moran, on December 7, 2005, spoke with Atkins at her school, obtaining

a signed statement in which Atkins admitted having sex with Plaintiff in Plaintiff's van

while it was parked in a cornfield off Nations Road on November 27, 2005, before being

interrupted by Defendants.  Supporting Deposition of Maryelyzabeth [*sic*] Atkins ("Atkins

Supporting Deposition"),[3] at 1.  Atkins describes the point at which the van's passenger

side sliding door was opened as "[t]he DEC guy opened the side door and told me to

step out of the van, he talked to me th[en] I got back into the van.  He asked me how

old I was and who I was.  At first I lied and said I was 18, I am only 15."  Atkins

Supporting Deposition at 1.  Atkins does not describe Defendant's actions during the

encounter as involving the use of any force or harsh language.

Later that same day, Moran, while operating an unmarked Sheriff's vehicle,

observed Plaintiff's vehicle at an intersection and tried, unsuccessfully, to get Plaintiff's

attention.  Moran followed Plaintiff for a short distance before activating the vehicle's

emergency lights and pulling over Plaintiff to speak with him.  Moran advised Plaintiff

she wished to speak with Plaintiff at his house, and Plaintiff agreed.  Moran and Plaintiff

separately drove their respective vehicles to Plaintiff's residence, where Moran gave

---

[3] Defendants' Exh. B.

Plaintiff the option of speaking with Moran inside either Plaintiff's house, or Moran's vehicle.  Plaintiff then entered Moran's vehicle and Moran administered to Plaintiff a warning pursuant to *Miranda v. Arizona*, 384 U.S 436 (1966) ("*Miranda* warning"), thereby advising Plaintiff of his Fifth Amendment rights against self-incrimination.

Moran interviewed Plaintiff for two hours, during which Plaintiff made additional incriminating statements regarding his relationship with Atkins and the events of November 27, 2005.  Based on the interview, Moran prepared a statement for Plaintiff to sign ("Plaintiff's Voluntary Statement"),[4] including that Plaintiff and Atkins were having sex in Plaintiff's van when a DEC officer approached Plaintiff's van and asked Plaintiff questions.  Plaintiff admitted that at that time, he was on probation for a prior conviction of having sex with Atkins when she was 13 years old, and that he was not permitted to be around anyone less than 17 years of age.

The statements Defendants obtained from Plaintiff and Atkins on November 27, 2005, along with the December 7, 2005 signed statement prepared by Moran and signed by Plaintiff, were presented to the Livingston County Grand Jury, which indicted Plaintiff on one count of statutory rape.  Plaintiff, as the defendant in Livingston County Court, filed an omnibus motion seeking, *inter alia* and as relevant to the instant action, to suppress the statements he made to Defendants on November 27, 2005, and the December 7, 2005 signed statement.  In a Suppression Hearing D&O, Judge Kohout suppressed the statements Plaintiff made to Defendants at the scene on November 27, 2005, and also found that Defendants, when they approached Plaintiff's van, "had no

---

[4] Defendants' Exh. A.

8

reason to believe that either criminal or hunting violations were occurring," Suppression

Hearing D&O at 3, that there was no evidence that criminality was afoot, *id.* at 8, that

Plaintiff, when interviewed by Defendants on November 27, 2005, had been detained

and was not free to leave, but was in police custody, *id.* at 8, and that Defendants also

were without either reasonable suspicion that Plaintiff was involved in any criminal act

or concern for the safety of Plaintiff and Atkins. *Id.* at 9.  Because Plaintiff was in police

custody, and was not administered any *Miranda* warning, and no exception to the

*Miranda* warning applied, Plaintiff's statements to Defendants on November 27, 2005,

were suppressed. *Id.*  Plaintiff did, however, subsequently plead guilty to third degree

rape in violation of New York Penal Law § 130.25, a conviction for which Plaintiff, to

date, remains incarcerated.


## DISCUSSION

**1.     Summary Judgment**

Summary judgment on a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250-51 (1986); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  The party

moving for summary judgment bears the burden of establishing the nonexistence of any

genuine issue of material fact and if there is any evidence in the record based upon any

source from which a reasonable inference in the non-moving party's favor may be

drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322.

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor and "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (citing cases). Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

"[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996). Furthermore, because Plaintiff is proceeding *pro se*, the court is required to liberally construe Plaintiff's papers submitted in opposition to Defendants' motion seeking summary judgment. *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2009) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'") (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006))

Plaintiff maintains Defendants violated his civil rights under 42 U.S.C. § 1983, pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or

immunities protected by the Constitution or laws of the United States. Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140).

In the instant case, both of Plaintiff's claims allege Defendants illegally arrested Plaintiff on November 27, 2005.  As such, Plaintiff's claims allege deprivations of his Fourth Amendment rights prohibiting search and seizure absent probable cause. Plaintiff argues in support of summary judgment on his claims that Judge Kohout's Suppression Hearing D&O conclusively establishes that Defendants' seizure of Plaintiff on November 27, 2005 constituted an illegal arrest without probable cause or even reasonable suspicion.  Plaintiff's Memorandum at 2.  As such, Plaintiff maintains that he is entitled to summary judgment on both his claims as a matter of law. *Id*.

In opposition to Plaintiff's motion, and in support of Defendants' motion, Defendants argue that the Suppression Hearing D&O is not entitled to the preclusive effect urged by Plaintiff, Defendants' Memorandum at 3-7, that Plaintiff has failed to establish the November 27, 2005 seizure constituted a Fourth Amendment violation, *id.* at 7-12, that Plaintiff's claims are barred by the favorable termination doctrine, *id.* at 12, and that Defendants are entitled to qualified immunity on both of Plaintiff's claims.  *Id*. at 13-15.  Alternatively, Defendants request that should the court deny Defendants' summary judgment motion, such denial be without prejudice and allow the parties a period of discovery. *Id*. at 16.

In opposition to Defendants' motion, Plaintiff disputes Defendants' contention, Defendants' Statement of Facts ¶ 7, that prior to November 27, 2005, neither Defendant was acquainted with Plaintiff, stating that one month prior to the November 27, 2005 seizure, Plaintiff met Defendant Wade at Plaintiff's mother's home when Wade was investigating an illegal dumping complaint at a park next to Plaintiff's mother's residence, at which time Wade would have observed Plaintiff's vehicle parked in the driveway.  Plaintiff's Response ¶ 7.  Plaintiff also disputes Defendants' contentions as to what Defendants initially observed in Plaintiff's van given that the windows to the van were tinted, rendering it difficult to see inside Plaintiff's van, particularly at dusk.  *Id*. ¶¶ 17, 20.

## 2.      Suppression Hearing D&O

Preliminarily, a finding of probable cause to support an arrest will defeat both state and federal constitutional claims for false arrest.  *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45-46 (2d Cir. 1985).  This well-established bar is particularly significant to the instant case because, in the state court proceedings against Plaintiff, Judge Kohout found Defendants did not have probable cause to arrest Plaintiff or even reasonable suspicion to seize Plaintiff.  Suppression Hearing D&O at 7-9.  Plaintiff therefore particularly maintains that this court must give preclusive effect to Judge Kohout's findings, relevant to this case, that Defendants (1) were without any legal authority to demand Plaintiff exit his vehicle, Plaintiff's Declaration ¶ 8; (2) upon looking into the van, they lacked any evidence that criminal activity was afoot, *id.*; and (3) were without reasonable suspicion that Plaintiff was involved in any criminal acts or

12

concern for their safety, *id*. ¶ 11, as well as to Judge Kohout's suppression of all statements made by Plaintiff to Defendants on November 27, 2005. *Id*. ¶ 12 (citing Suppression Hearing D&O at 9).  This court, however, is not bound by the factual determinations in the Suppression Hearing D&O.

"Under 28 U.S.C. § 1738 a federal court must, in according full faith and credit, give to a State court judgment the same preclusive effect as would be given to the judgment under the law of the state in which the judgment was rendered."  *Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir. 1996). *See Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir.  2007) ("There is no doubt that 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984))).  *See also Tierney v.  Davidson*, 133 F.3d 189, 195 (2d Cir. 1998) ("A party's ability to relitigate an issue decided in a prior state court litigation depends on the law of the state in which the earlier litigation occurred."). "This rule applies with equal force to actions brought under 42 U.S.C. § 1983."  *Id*. Because Plaintiff seeks to accord full faith and credit to the Suppression Hearing D&O issued in Livingston County Court in New York, whether preclusive effect is to be given to the May 5, 2006 D&O is to be decided according to New York law. *Id*.

In New York, collateral estoppel prevents a party from religitating an issue decided against that party in a prior adjudication provided two essential elements are present.  *Jenkins*, 478 F.3d at 85.  "'First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair

opportunity to contest the prior determination.'"  *Id*.  (quoting *Juan C. v. Cortines*, 79

N.E.2d 1061, 1065 (N.Y. 1997)).  Furthermore, "a prior adjudication on a motion

brought within a prior proceeding in which issues identical to those now raised were

decided" is also to be given preclusive effect provided there was "a full and fair

opportunity to contest the decision now said to be controlling.  *Vavolizza v. Krieger*, 308

N.E.2d 439, 442 (N.Y. 1974).  In the instant case, there is no question that the issue of

Defendants' seizure of Plaintiff on November 27, 2005 is the same as that before Judge

Kohout on a motion to suppress filed by Plaintiff in the criminal proceedings against

him.  As such, whether the Suppression Hearing D&O is to be given preclusive effect

with regard to the instant action turns on whether Defendants, in the criminal

proceedings against Plaintiff, had a full and fair opportunity to litigate the issue of

Plaintiff's seizure.

        "The burden is on the party attempting to defeat the application of collateral

estoppel to establish the absence of a full and fair opportunity to litigate."  *D'Arata v.*

*New York Central Mutual Fire Insurance Company*, 564 N.E.2d 634, 636 (N.Y. 1990).

"Under New York law, appellate review plays a critical role in safeguarding the

correctness of judgments. . . ."  *Johnson*, 101 F.3d at 795 (citing *Malloy v.  Trombley*,

405 N.E.2d 213 (N.Y. 1980)).  As such, "collateral estoppel cannot be applied without

first considering the availability of such review.  If a party has not had an opportunity to

appeal an adverse finding, then it has not has a full and fair opportunity to litigate that

issue."  *Id*. (citing *People v.  Medina*, 617 N.Y.S.2d 491 (2d Dept.  1994), *appeal denied*,

647 N.E.2d 463 (1995)).  Significantly, although Plaintiff was the defendant in the

criminal proceeding before Judge Kohout, Defendants were not parties to the criminal

proceedings and, as such, did not have a full and fair opportunity to litigate the issues of their seizure of Plaintiff on November 27, 2005.

In particular, although Defendants gave testimony at the suppression hearing which served as the basis for the Suppression Hearing D&O, Defendants did not appear at the suppression hearing as parties but, rather, as witnesses.  Defendants thus had no opportunity to litigate the suppression issues as parties, nor to appeal and obtain further review of the Suppression Hearing D&O.  Defendants therefore did not have a full and fair opportunity to litigate the issues of probable cause and reasonable suspicion in connection with the November 27, 2005 seizure of Plaintiff.  *Johnson*, 101 F.3d at 795.  Accordingly, Judge Kohout's factual determinations set forth in the Suppression Hearing D&O are entitled to no preclusive effect in the instant action.  The court thus turns to the merits of Plaintiff's claims, *i.e.*, whether Defendants' arrest of Plaintiff on November 27, 2005 violated the Fourth Amendment.


3.	**Fourth Amendment**

There are "[t]wo categories of seizures of the person implicating the protection of the Fourth Amendment. . . ."  *Posr v.  Doherty*, 944 F.2d 91, 98 (2d Cir.  1991).  "The first, an 'investigative detention' or a *Terry* stop, employs the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time,' and can be supported by reasonable suspicion, instead of probable cause."  *Posr*, 944 F.2d at 98 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).  "As the level of intrusiveness arises, however, an encounter between the police and a citizen is more properly categorized as an arrest - the second category of seizures of the person."

*Posr*, 944 F.2d at 98.  "'If the totality of the circumstances indicates that an encounter has become too intrusive to be classified as an investigative detention, the encounter is a full-scale arrest, and the government must establish that the arrest is supported by probable cause.'" *Id.*  (quoting *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989)).

"An arrest need not be formal; it may occur even if the formal words of arrest have not been spoken provided that the subject is restrained and his freedom of movement is restricted."  *Posr*, 944 F.2d at 98 (citing *United States v. Levy*, 731 F.2d 997, 1000 (2d Cir. 1984)).  Nor does an arrest require the subject be charged and prosecuted.  *Id.* at 98-99 ("once the intrusion of an arrest has occurred, its definition does not depend upon what follows, such as station house booking."  (citing *United States v. Brunson*, 549 F.2d 348, 357 (5th Cir.), *cert. denied*, 434 U.S. 842 (1977))).  Nevertheless, "either an arrest or a detention supportable by less than probable cause may be actionable under § 1983, provided the 'seizure' in question is 'unreasonable.'" *Id.* at 98 (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)).

As stated, Discussion, *supra*, at 12, a finding of probable cause to support an arrest will defeat both state and federal constitutional claims for false arrest.  *Zanghi*, 752 F.2d 45-46.  Nor is the Fourth Amendment "infringed where police officers conduct an investigatory stop, based on reasonable suspicion, of a person suspected of criminal activity."  *United States v. Muhammad*, 463 F.3d 115, 121 (2d Cir. 2006) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).  "The suspicion that criminal activity is afoot must be both reasonable and articulable, and an 'incohate and unparticularized suspicion or 'hunch'' of criminal activity is insufficient to justify even a brief detention for the purpose of

investigation." *Muhammad*, 463 F.3d at 121 (citing and quoting *Terry*, 392 U.S. at 27 and 30).  "What is required is 'some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'"  *Id*.  (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

In the instant case, although Plaintiff was never formally placed under arrest, Defendants do not dispute that their initial encounter with Plaintiff on November 27, 2005 developed to the point where Plaintiff was seized and not free to leave.  Wade Declaration ¶ 19; Ward Declaration ¶ 18.  Accordingly, summary judgment may be granted in favor of Defendants if the undisputed evidence in the record establishes Defendants' arrest of Plaintiff on November 27, 2005, was based on probable cause. The undisputed facts establish that on November 27, 2005, Defendants first approached Plaintiff's vehicle to investigate whether any hunting activity that may be underway was in compliance with New York's hunting laws, but that the circumstances quickly yielded reasonable suspicion that criminality, *i.e.*, a sex offense, may be afoot, justifying the initial seizure of Plaintiff, and that the subsequent questions put to Plaintiff and Atkins gave rise to probable cause to arrest Plaintiff.

Defendants maintain, and Plaintiff does not dispute, Defendants' initial encounter with Plaintiff at 4:20 P.M. on November 27, 2005 to check for compliance with hunting and license laws was justified by the facts that it was hunting season, Plaintiff's vehicle was parked in a cornfield where deer tend to gather.  Wade Declaration ¶¶ 4-9; Ward Declaration ¶¶ 4-9.  Because it was dusk, it was also a likely time for hunters to return to their vehicles.  Wade Declaration ¶ 9; Ward Declaration ¶ 9.  Defendants believed Plaintiff's van may be a hunter's vehicle, and decided to check for hunting license

17

compliance, as well as compliance with other hunting laws, such as an attempt to use artificial lights to hunt after dark.  Wade Declaration ¶¶ 9-10; Ward Declaration ¶¶ 9-10.

As DEC officers, Defendants are authorized to enforce the provisions of New York's Environmental Conservation Law, and to issue an appearance ticket or a uniform appearance ticket and simplified information for any violation of New York's Environmental Conservation Law relevant to hunting.  N.Y. Envtl. Conserv. Law § 71-0201.  Additionally, New York DEC officers are authorized, *inter alia*, to enforce hunting licensing laws, N.Y. Envtl. Conserv. Law § 71-0907[2], and "to search without search warrant any boat or vehicle of any kind . . . whenever they have cause to believe that any provision of this article [Enforcement] or of any law for the protection of . . . game . . . has been or is being violated, and to use such force as may be necessary for the examination and search. . . ."  N.Y. Envtl. Conserv. Law § 71-0907[4]b.   The holder of a hunting license is required to exhibit such license upon demand "to any police officer. . .  in control of the lands or waters . . . on which the license holder is present."  N.Y. Envtl. Conserv. Law § 11-0705[1](2)b.  A hunter's failure to produce a valid hunting license upon demand "is presumptive evidence that the holder is hunting, fishing or trapping, as the case may be, without holding the license . . . required . . . ."  N.Y. Envtl. Conserv. Law § 11-0705[3].  As such, Defendants' initial encounter with Plaintiff on November 27, 2005 required neither any reasonable suspicion of criminal activity nor probable cause.

Defendants, upon pulling the patrol vehicle behind the parked van, noticed two people inside, one of whom was observed to move from the back of the van to the front, while other one looked out the window before lying down, hiding from view.  Wade

Declaration ¶ 11; Ward Declaration ¶ 11.  Such furtive movement in reaction to the

arrival of law enforcement officials caused Defendants to become suspicious.  *Id*.

Defendants exited their patrol vehicle and approached the van, with Officer Wade on

the passenger side and Officer Ward on the driver's side.  Wade Declaration ¶ 12;

Ward Declaration ¶ 12.  Wade, looking through a window on the van's passenger side,

observed Plaintiff sitting in the driver's seat, in the process of pulling up his pants which

were down at his knees, and recognized Plaintiff as the person Wade saw moving from

the back of the van to the front.  Wade Declaration ¶ 12.  That Plaintiff was pulling up

his pants indicated to Wade that some illicit activity may be taking place.  *Id*.   Ward,

looking through a window of the van's driver's side, also observed that the person sitting

in the driver's side was the person Defendants had seen moving from the back of the

vehicle to the front.  Ward Declaration ¶ 12.  Defendants then noticed an individual lying

on her back in the rear of the van, pressed up against the passenger side, sliding door,

as if trying to hide herself from view.  Wade Declaration ¶ 13; Ward Declaration ¶ 13.

That the person was trying to hide from view from a police officer, during hunting

season when guns are commonly present, gave each Defendant concern for his own

safety, as well as the safety of his partner.  *Id*.  Defendants also were not sure whether

the individual was bound and required assistance.  *Id*.  Plaintiff admits that the van's

tinted window's would have rendered it difficult for Defendants to determine what was

going on inside the van.  Plaintiff's Response ¶¶ 17, 20.  Based on these

considerations, Defendants determined it was necessary to further investigate. *Id*.

Up to this point, Defendants' actions were lawful given that in New York,

Defendants, as sworn law enforcement officers of the D.E.C., are police officers under

New York law.  New York Crim. Pro. Law § 1.20[34][j] (McKinney 2003) (providing that "[a] sworn officer of the division of law enforcement in the department of environmental conservation" is a "police officer.").  That DEC officers are "police officers" has been recognized by New York's Court of Appeals.  *See Singer v. Berle*, 389 N.E.2d 97, 98-99 (N.Y. 1979).  As such, upon observing that Plaintiff was in a state of partial undress, while a female occupant appeared to be attempting to hide herself from view in the rear of the van, alerted Defendants, as law enforcement officers, that some illicit sexual conduct may have occurred, or was about to occur.  Furthermore, even assuming, *arguendo*, Plaintiff's pants were lowered because Plaintiff was intending to relieve himself, as Plaintiff advised Defendants, Ward Declaration ¶ 21, such fact would not explain as to why Atkins appeared to be hiding something in the rear of the van, which could have been, *inter alia*, an illegal hunting weapon, or unlawfully captured game.

The totality of these circumstances support reasonable suspicion that criminal activity was afoot, sufficient to detain Plaintiff while investigating whether there was probable cause for arrest.  *United States v. Gori*, 230 F.3d 44, 53 (2d Cir. 2000) (once a police officer has reasonable suspicion of possible criminal behavior, the police officer may stop a person to investigate whether there is, in fact, probable cause to arrest for criminal activity).  The investigative methods that can be used to either confirm or dispel Defendants' reasonable suspicion are "those 'necessary to effectuate the purpose of the stop . . . [and] should be the least intrusive means reasonably available to verify or dispel the officers' suspicion in a short time."  *Gori*, 230 F.3d at 56 (quoting *Florida v. Royer*, 460 U.S. 491, 500-01 (1983)).  Permitted further investigative techniques include interrogation, particularly of pedigree information.  *Gori*, 230 F.3d at 57 (citing *United*

*States v. Oates*, 560 F.2d 45, 63 (2d Cir. 1977) ("the right to interrogate during a 'stop'

is the essence of *Terry* and its progeny.")).

Defendants' reasonable suspicion that criminality was afoot justified Wade's

opening the van's sliding passenger side door to speak with the van's other occupant.

Wade Declaration ¶ 15.  Upon opening the van's door, Wade observed Atkins "was

rearranging her clothing by pulling her shirt down and straightening her pants up," and

"was in her early teens" while Plaintiff appeared to be "in his twentys [*sic*]."  Wade

Declaration ¶ 15.  Such observations by Wade justified his reasonable suspicion that

"there may have been inappropriate activity taking place between a minor and an adult

man," *id.*, as a result of which Wade directed Ward to have Plaintiff step out of his

vehicle.  *Id*. ¶ 17.  At Ward's request, Plaintiff exited his vehicle, and Ward conducted a

subsequent pat frisk of Plaintiff, which yielded a lock blade knife, and a "quick internal

scan of the vehicle" to determine if any weapons were inside.  Wade Declaration ¶ 17;

Ward Declaration ¶ 16.  In response to Wade's questioning, Plaintiff stated he was

either 20 or 21 years old, and that Atkins was 16.  Wade Declaration ¶ 18; Ward

Declaration ¶ 17.  Given that both Defendants were aware that the legal age of consent

in New York is 17, Defendants then had probable cause, based on Plaintiff's

statements, including that he had sex with Atkins, that illegal sexual contact,

specifically, statutory rape, had occurred between Plaintiff and Atkins, such that Plaintiff

was not free to leave and, thus, was under arrest.  Wade Declaration ¶¶ 18-21; Ward

Declaration ¶¶ 15-18.  This is consistent with Wade's report prepared in connection with

his November 27, 2005 patrol.  *See* DEC Complaint Form at 1 (reporting that

Defendants, at 4:20 P.M. on November 27, 2005, while conducting routine patrol for

21

deer hunting activity along Nations Road, "checked the occupants of a vehicle parked off the road in a corn field," and that "the case possibly involves a statutory rape of a 15 year old female.").

Moreover, Defendants, as police officers, are among those required to report cases of suspected child abuse or maltreatment.  N.Y. Soc. Serv. Law § 413[1](a).  N.Y. Soc. Serv. Law § 412[1](a) defines an "abused child" with reference to N.Y. Family Court Act which, as relevant, defines an "[a]bused child" as "a child less than eighteen years of age whose parent or other person legally responsible for his care . . . commits, or allows to be committed an offense against such child defined in article one hundred thirty of the penal law . . . ."  N.Y. Family Court Act § 1012(e)(iii).  As relevant, New York Penal Law deems a person less than 17 years old incapable of consenting to engaging in a sexual act, such that one who engages in sexual contact with someone more than 14 but less than 17 years old, and who is at least five years older than the victim commits sexual abuse in the third degree.  N.Y. Penal Law § 130.05.  Defendants' initial perception that Plaintiff was in his twenties, and Atkins was in her early teens, and that both were partially undressed, supported Defendants' reasonable suspicion that illegal sexual contact was occurring and gave Defendants reason to investigate, including requesting Plaintiff to step out of the van, whether the suspected criminal activity qualified under N.Y. Soc. Serv. Law § 413[1](a) as child abuse which Defendants would be required to report.  Within a matter of minutes after Plaintiff was requested to step out of the van, Defendants' reasonable suspicions were confirmed when Plaintiff's age of 21 was established by his driver's license, and Plaintiff reported Atkins was 16 before Atkins's father arrived and gave his daughter's age as 15 and

stated he knew his daughter was with Plaintiff, thereby confirming the accuracy of Defendants' initial perceptions.  That Defendants were investigating possible statutory rape is further confirmed by the DEC Complaint Form on which Wade reported "[t]he case possibly involved a statutory rape of a 15 year old female."  DEC Complaint Form at 1.

As such, the totality of the undisputed circumstances establishes that Defendants were, under New York law, permitted to approach Plaintiff on November 27, 2005 to check for compliance with New York hunting and license laws.  Upon observing Plaintiff in the driver's seat of his vehicle partially unclothed, with another individual trying to secrete herself in the rear of the vehicle, Defendants had reasonable suspicion that criminality may be afoot, whether a violation of a hunting law or a criminal act against another person.  Such reasonable suspicion permitted Defendants to use the least intrusive investigative techniques to either confirm or dispel their reasonable suspicion, including questioning Plaintiff and Atkins, whose responses gave rise to probable cause to arrest once Plaintiff's age was established by his New York State driver's license as 21, while Plaintiff, himself, stated Atkins was 16 and that he had sexual intercourse with her in the van.

Accordingly, the record fails to establish Defendants violated Plaintiff's Fourth Amendment rights in connection with the November 27, 2005 arrest.  Rather, the record establishes Plaintiff's arrest began as a routine hunting and license law check and quickly developed into a stop based on reasonable suspicion that criminality was afoot, justifying further investigation using the least intrusive techniques, here, interrogation limited to the ages of Plaintiff and Atkins, which yielded probable cause that illegal

sexual conduct had occurred for which Plaintiff was arrested.  Plaintiff therefore was not subjected to an unreasonable seizure and summary judgment is GRANTED in favor of Defendants, and DENIED as to Plaintiff.

**4.     Fifth Amendment**

Although not specifically pleaded as such, Plaintiff's allegation that Defendants harassed Plaintiff and Atkins on November 25, 2007, and reliance as a basis for his claim on the Suppression Hearing D & O in which Judge Kohout suppressed incriminating statements made by Plaintiff without Defendants first advising Plaintiff of his Fifth Amendment right against self-incrimination, could be liberally construed by the court, in light of Plaintiff's *pro se* status, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of *pro se* complaint are held to less stringent standards than formal pleadings drafted by attorneys), as raising a § 1983 claim based on a violation of Plaintiff's Fifth Amendment right.  Nevertheless, even liberally construing the Amended Complaint as alleging a § 1983 claim based on the use against Plaintiff in a criminal proceeding of incriminating statements obtained from Plaintiff in violation of his Fifth Amendment right against self-incrimination, the record is devoid of any evidence on which a reasonable jury could find that the suppressed statements were coerced from Plaintiff.

In relevant part, the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Fifth Amendment "guarantees 'the right of a person to remain silent unless he chooses to

speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Weaver v. Brenner*, 40 F.3d 527, 534 (2d Cir. 1994) (citing *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)).  In its seminal decision *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court "made clear that the protections of the Fifth Amendment apply during custodial interrogation of a criminal defendant, since that is when criminal proceedings begin."  *Weaver*, 40 F.3d at 534 (citing *Miranda*, 384 U.S. at 477). "[T]he *Miranda* rule is a prophylactic employed to protect against violations of the Self-Incrimination Clause."  *United States v. Patane*, 542 U.S. 630, 636 (2004). Furthermore, unwarned statements obtained from a criminal defendant do not have to be used against the defendant at trial in order to violate the Fifth Amendment.  *Weaver*, 40 F.3d at 535 (holding "use or derivative use of a compelled statement at *any* criminal proceeding against the declarant violates that person's Fifth Amendment rights; use of the statement at trial is not required."  (italics in original)).  As relevant to the instant case, the use of a coerced confession before a grand jury violates the Self-Incrimination Clause.  *Higazy v. Templeton*, 505 F.3d 161, 171 (2d Cir. 2007) (citing Weaver, 40 F.3d at 536).  In the instant case, the record implies that statements Defendants obtained from Plaintiff during the November 27, 2005 detention were presented to the grand jury which returned the indictment containing the charge on which Plaintiff was ultimately convicted and currently incarcerated.  *See* Suppression Hearing D&O at 1 (statements made by defendant [Plaintiff] to investigators and earlier unlawfully obtained statements were presented to grand jury).

Nevertheless, neither the negligent or even deliberate failure to provide full *Miranda* warnings, by itself, violates a defendant's constitutional rights; rather, potential

violations occur, if at all, only upon the admission of a coerced, unwarned statement into evidence during the criminal proceedings.  *Patane*, 542 U.S. at 641.  *See also Chavez v. Martinez*, 538 U.S. 760, 769 (2003) ("mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness."); *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) ("*Miranda* violations, absence coercion, do not rise to the level of constitutional violations actionable under § 1983." (citing *Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998))).  Absent coercion, "[t]he appropriate remedy for violations of *Miranda* rights is exclusion of the evidence at trial."  *Id*.

"The test for whether a statement was improperly obtained by coercion is 'determined by the totality of the circumstances.'"  *Higazy*, 505 F.3d 161, 170 (2d Cir. 2007) (quoting *Deshawn E.*, 156 F.3d at 346 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973))).  The circumstances to be considered in applying the totality of the circumstances test include

> (1) the characteristics of the accused, (2) the conditions of the interrogation, and (3) the conduct of law enforcement officials.  The relevant characteristics of the individual who confessed are the individual's experience and background, together with the suspect's youth and lack of education or intelligence.  The second circumstance, the conditions under which a suspect is questioned, include the place where an interrogation is held, and the length of the detention. The presence or absence of counsel is a significant condition because counsel can assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process.
>
> The final and most critical circumstance for purposes of this appeal is the law enforcement officer's conduct.  Facts bearing on that conduct include the repeated and prolonged nature of the questioning or the failure to inform the accused of his constitutional rights, whether there was physical mistreatment such as beatings, or long restraint in handcuffs, and whether other physical deprivations occurred such as depriving an accused of food, water or sleep, or even clothing, for a prolonged period.  In addition . . . such police conduct might

include psychologically coercive techniques such as brainwashing or promises of leniency or other benefits.

*Green*, 850 F.2d at 901-02 (citing cases).

In the instant case, not only does Plaintiff fail to argue that the statements obtained from him were coerced, the record is also devoid of any evidence from which a reasonable jury could find the totality of the circumstances suggest the statements were coerced.

Specifically, as to the circumstances of Defendants' seizure of Plaintiff on November 27, 2005, Plaintiff alleges that Defendants "snatched open the side door of my van screaming profanities at my girlfriend and I [*sic*]," accused Plaintiff and Atkins "of having sex, even though we were both fully dressed," "had their hands on their guns," "ordered us out of the van," and that Plaintiff "was taken by Officer Ward to the front of their patrol vehicle with my hands behind my back and ordered to empty my pockets," while Defendants "were calling my girlfriend a whore and searching my van." Complaint, Second Claim.  At the time of the subject seizure, however, Plaintiff was an adult who already had been convicted of the statutory rape of Atkins when she was 13 years old and, thus, was well aware of the consequences of his conduct.  The record is devoid of any indication that Plaintiff was of low intelligence or uneducated.  Although the seizure occurred on a private rural road, the record indicates that Plaintiff was allowed to telephone his mother, Atkins was allowed to telephone her father, and that all the parties were released and allowed to leave in their own vehicles within 30 minutes of their initial encounter with Defendants.  DEC Complaint Form (reporting Defendants' encounter with Plaintiff on November 27, 2005, occurred at 4:20 P.M.);

Atkins Supporting Deposition (stating Atkins's father arrived within "10 - 15 minutes" after receiving Atkins's call).  Other than the pat frisk and being led from the van to Defendants' patrol vehicle, Plaintiff does not allege that he was subjected to any physical contact, let alone beating or other mistreatment, and the brevity of the seizure negated any requirement that Plaintiff be provided with food, water, and sleep.  Insofar as Plaintiff was not fully clothed when Defendants first approached Plaintiff's vehicle, it is undisputed that Officer Ward ordered Plaintiff to pull up his pants upon exiting the vehicle, such that Plaintiff did not remain in a state of undress for the duration of the seizure.  Nor can any statements Plaintiff attributes to Defendants made during the seizure be construed as psychologically coercive techniques or promises of leniency or other benefits.  Significantly, absent from Atkins's description of the incident is any assertion that Defendants used any force, threats, or foul or harsh language during the November 27, 2005 encounter.  *See* Atkins Supporting Deposition, *passim*.

Circumstances the Second Circuit has found insufficient to establish coercion include questioning by police detectives for two hours during which the defendant requested psychiatric help, the detectives made references to the electric chair, and engaged in "chicanery" by asserting the case against the defendant was already strong, and falsely advising the defendant that his fingerprints matched prints in blood found in the murdered victim's apartment.  *Green v. Scully*, 850 F.2d 894, 902-903 (2d Cir. 1988).  Plaintiff alleges no use of falsehoods by Defendants.  *See also Jocks*, 316 F.3d at 138 (holding police officer's "making provocative statements in front of a suspect who has insisted on having his lawyer present and asking if the statements are accurate is simply a run-of-the-mill *Miranda* violation, which can taint the evidence, but is not

28

independently actionable as a civil rights claim.").

As such, the totality of the circumstances of Defendants' seizure of Plaintiff on November 27, 2005 cannot be construed as coercive.  The use of statements Defendants obtained from Plaintiff on November 27, 2005, in criminal proceedings against Plaintiff, despite the absence of any *Miranda* warning, thus did not violate Plaintiff's Fifth Amendment right against self-incrimination.


## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 21) is DENIED; Defendants' motion (Doc. No. 26) is GRANTED.  The Clerk of the Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March <u>28</u>, 2011
            Buffalo, New York


**Any appeal of this Decision and Order to the United States Court of Appeals for the Second Circuit, New York, New York, must be filed within thirty (30) days of the date of judgment in accordance with Fed.R.App. 4(a)(1)(A) and (c).**